UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                 Case No: 6:25-cr-343-JSS-NWH-1

LESBIA CRISTINA GRULLON
NOLASCO,

    Defendant.
_____/

## **ORDER**

Invoking Federal Rules of Evidence 401, 403, and 404, the Defendant, Lesbia Cristina Grullon Nolasco, has filed three motions in limine (Dkts. 26, 27, 28) in advance of the April 13, 2026 jury trial in this case, (*see* Dkt. 23 at 1). The first motion seeks to exclude any reference to the Defendant's Immigration and Customs Enforcement (ICE) detainer, her removability, and her immigration proceedings and to prohibit the use of the term "illegal alien" and similar terms during the trial. (Dkt. 26.) The second motion seeks to exclude references to investigations involving the Defendant's presumed relatives, references to Operation Bailout in particular and fraud-related operations and initiatives in general, and evidence suggesting a coordinated scheme and seeks to prohibit the use of the term "imposter" to describe the Defendant and her presumed relatives during the trial. (Dkt. 27.) The third motion seeks to exclude any reference to the Defendant's prior criminal history and to allegations of theft previously levied against her. (Dkt. 28.) The Government

generally opposes the motions in limine.  (Dkt. 29.)  Upon consideration, for the reasons outlined below, the court grants the motions in part and denies them in part.

## BACKGROUND

The Defendant was indicted on five counts in December 2025. (Dkt. 1.)  Count one charges her with committing passport fraud in violation of 18 U.S.C. § 1542 on August 20, 2018, when she included in a passport application a false date of birth and a false name with the initials R.M.D.T.A.[1]  (Dkt. 1 at 1.)  Counts two and three charge her with the theft of government money or property in violation of 18 U.S.C. § 641— for the periods of August 26, 2021, to June 1, 2022, for count two and December 8, 2022, to November 1, 2025, for count three—in connection with the receipt of more than $1,000 in Supplemental Nutrition Assistance Program (SNAP) benefits funded by the United States Department of Agriculture.  (Dkt. 1 at 2–3.)  Count four charges the Defendant with committing aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) on June 24, 2025, when she possessed or used the name, date of birth, and Social Security number of R.M.D.T.A. to commit the theft charged in count three. (Dkt. 1 at 3.)  Count five charges the Defendant with making a false statement to a federal agency in violation of 18 U.S.C. § 1001(a)(2) on March 7, 2024, when she told agents of the United States Department of State that she was R.M.D.T.A. and

---

[1] The indictment refers to the identity theft victim only by her initials, R.M.D.T.A.  (*See* Dkt. 1.) Although the parties identify the victim by her name in their filings, (*see* Dkts. 26, 27, 28, 29), this order continues the indictment's practice of referring to the victim by her initials in recognition of her "right to be treated with fairness and with respect for [her] dignity and privacy."  *See* 18 U.S.C. § 3771(a)(8).

provided R.M.D.T.A.'s personal identifying information as her own.  (Dkt. 1 at 3.) The indictment also includes forfeiture allegations concerning $10,387 purportedly obtained from the crimes charged in counts one through three.  (*Id.* at 4–5.)

In its omnibus response to the motions in limine, the Government claims that "[f]or decades," the Defendant has falsely "held herself out to be" R.M.D.T.A., "a real United States citizen living in Puerto Rico."  (Dkt. 29 at 1.)  The Government asserts: "Over the years, [the] Defendant has obtained passports and applied for government benefits that she was not entitled to under [R.M.D.T.A.]'s identity."  (*Id.*)  According to the Government, the Defendant was born in 1977 in the Dominican Republic and three times, in 1989, 1996, and 2018, obtained United States passports using R.M.D.T.A.'s name, Social Security number, place of birth, and date of birth.  (*Id.* at 2–3.)  Reportedly, in 1989, when the Defendant was a minor, someone falsely claiming to be a relative of R.M.D.T.A. signed the passport application on the Defendant's behalf.  (*See id.* at 2, 15.)  In fact, the Government states, "several members of [R.M.D.T.A.'s] family had their identities stolen by members of [the] Defendant's family," and the "Defendant's family then traveled to the United States under those identities."  (*Id.* at 14.)  The Government adds: "While some family members ceased using the identities and others since passed away, [the] Defendant never stopped using the identity and maintains that she is [R.M.D.T.A.]"  (*Id.*)

In the Government's view, because the Defendant is not a United States citizen but illegally entered the United States using R.M.D.T.A.'s identity, the Defendant is "subject to removal from the United States" and thus has a motive "to continue lying

and using [R.M.D.T.A.]'s identity." (*Id.* at 11.)  Further, the Government asserts that as a noncitizen who entered the country illegally, the Defendant does not have a Social Security number and therefore used R.M.D.T.A.'s Social Security number when applying for SNAP benefits.  (*Id.* at 10–11.)  The Government explains that the Defendant applied for the federally funded SNAP benefits through Florida's Department of Children and Families, as the program is administered by the states. (*Id.* at 5.)

With respect to the Defendant's criminal history, the Government reports that she was convicted of grand theft in 1999, 2014, and 2015, petit theft in 2005, 2014, and 2020, and uttering forgery in 2014 and that the petit theft convictions, at least, occurred in Florida.  (*Id.* at 16–17; *see id.* at 19.)  The Government also states:

> The facts of the conviction for uttering a forgery and the 2014 theft conviction are that [the] Defendant obtained money from clients of different law firms and took the money for herself, in one case writing the money orders for herself and the other taking cash from clients like how she is now using SNAP benefits that do not belong to her.

(*Id.* at 20.)  According to the Government, the Defendant submitted her fingerprints to the Dominican Republic in August 2012 to secure a cedula (a form of identification) under her real name, and those fingerprints were matched to fingerprints associated with the convictions, which were in R.M.D.T.A.'s name.  (*Id.* at 6, 17–18.)  Law enforcement purportedly identified the Defendant through the fingerprint match in addition to other evidence.  (*Id.*)  Additionally, the Government reports that the "Defendant's emergency contact in her 2018 passport application . . . informed investigators during an interview that [the] Defendant stole money from her but [the]

Defendant's sister . . . and another person associated with them repaid the money." (*Id.* at 17.) The Government claims that in a voluntary March 2024 interview with Department of State agents, the Defendant falsely stated that this sister was merely a friend from Puerto Rico whose last name she did not know. (*Id.* at 4, 17.)

With respect to Operation Bailout, the Government explains that the Department of State's San Juan Resident Office in Puerto Rico implemented the initiative to identify individuals who were using the identities of Puerto Rican residents to obtain United States passports and to commit identity theft. (*Id.* at 13.) The Government states that as part of Operation Bailout, the Department of State investigated R.M.D.T.A.'s brother and the investigation led law enforcement to identify the Defendant's sister as having used the identity of another relative of R.M.D.T.A. (*Id.* at 13–14.) In the Government's words, "[l]aw enforcement learned of [the] Defendant's true identity after an initiative called Operation Bailout uncovered that [the] Defendant's family stole the identities of a family of [United States] citizens living in Puerto Rico." (*Id.* at 2.)

## APPLICABLE STANDARDS

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *United States v. Quiles-Davila*, No. 6:24-cr-233-JSS-DCI-1, 2025 WL 1346258, at *1, 2025 U.S. Dist. LEXIS 87674, at *3 (M.D. Fla. May 8, 2025) (quotation omitted). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid

the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Id.* (alteration adopted and quotation omitted). "The district court has broad discretion to determine the admissibility of evidence, and [the appellate court] will not disturb the [district] court's judgment absent a clear abuse of discretion." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *see also United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first[]hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## ANALYSIS

In the first motion, the Defendant argues that references to her immigration status including her ICE detainer, removability, and immigration proceedings, as well as the use of the term "illegal alien" and similar terms, should be excluded from trial under Federal Rule of Evidence 401 because immigration status is not relevant to any of the counts against her. (Dkt. 26 at 3–4.) In addition, she seeks exclusion under Rule 403 arguing that "[r]eference to immigration status carries an extraordinary risk of unfair prejudice and emotional reaction." (*Id.* at 3.) In response, the Government does not oppose the request as to the Defendant's ICE detainer but contends that her immigration status is sufficiently probative, particularly of her knowledge, intent, and motive, to be admissible. (Dkt. 29 at 9–12 & n.1.) The Government does not ask the court to permit use of the term "illegal alien" and similar terms. (*See id. passim*.)

Because the Government does not intend to introduce the Defendant's ICE

detainer at trial, the court grants the first motion insofar as the ICE detainer is concerned.  Further, absent argument from the Government on the subject, the court grants the first motion's request regarding the term "illegal alien" and similar terms, such as the use of the word "illegal" as a noun.  *See Williams v. Garland*, 59 F.4th 620, 624 n.1 (4th Cir. 2022) (noting in the immigration context that the word "alien," in and of itself, "has been recognized as an archaic and dehumanizing term" (quotation omitted)); *United States v. Rodriguez-Soto*, No. 4:22-CR-0018-SEG-WEJ, 2022 WL 17547579, at *2 n.3, 2022 U.S. Dist. LEXIS 221951, at *6 n.3 (N.D. Ga. Dec. 9, 2022) (expressing a preference against the use of the word "alien"—a "pejorative term" in the immigration context).

However, the court agrees with the Government about the remainder of the first motion.  To begin, the court notes as to Rule 401 that "the standard for what constitutes relevant evidence is a low one," *United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024) (alteration adopted and quotation omitted), and as to Rule 403 that "[t]he balance under [the rule] should be struck in favor of admissibility," *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989).  In this case, as the Government argues, the "Defendant's immigration status is relevant [to the charged passport fraud] to show that she knowingly made false statements with the intent to obtain a [United States] passport and not be removed from the United States as she knew she was not in fact a [United States] citizen." (Dkt. 29 at 10.)  Additionally, the "evidence of [the] Defendant's immigration status is inextricably intertwined" to her applications for SNAP benefits—which lie at the heart of the theft charges—given the Government's

theory that as a noncitizen who allegedly entered the United States illegally, the Defendant "could not actually provide her own [S]ocial [S]ecurity number" in the applications. (*Id.* at 10–11.) Moreover, the Defendant's immigration status is relevant to the charge of making a false statement to a federal agency because it potentially provides her with a motive to lie. (*Id.* at 11.) Indeed, the evidence that the Defendant seeks to exclude is not only relevant to the charges against her but also sufficiently probative of her knowledge, intent, and motive to overcome her Rule 403 challenge. *See United States v. Hano*, 922 F.3d 1272, 1290 (11th Cir. 2019) (rejecting the defendant's argument that "evidence transformed a case about a robbery and conspiracy into a case about immigration" when the district court declined to exclude the defendant's redacted immigration file,  as well as testimony from a border officer about the defendant's travel to Cuba, under Rule 403 (quotation omitted)); *United States v. Sahavneh*, 480 F. App'x 530, 535 (11th Cir. 2012) ("[A]ny danger that the immigration records would unfairly prejudice [the defendant] or mislead the jury was minimal and did not outweigh, much less substantially outweigh, the probative value of the evidence."). Accordingly, the court denies the remainder of the first motion.

In the second motion, the Defendant argues that references to investigations involving her presumed relatives, references to Operation Bailout and broader fraud-related initiatives, evidence suggesting a coordinated scheme, and use of the term "imposter" to describe the Defendant and her presumed relatives should be excluded under Rules 401 and 403. (Dkt. 27.) The second motion makes two arguments, one per rule. (*See id.* at 3–4.) The Rule 401 argument challenges the relevance of thirty-

- 8 -

party conduct absent allegations of conspiracy. (*Id.* at 3.) The Rule 403 argument expresses concern that "[t]he jury will incorrectly assume that the [D]efendant was a part of a bigger scheme or conspiracy to defraud[,] and use of the term 'imposter' will improperly sway the jury to think [that] the [D]efendant is guilty before [the jury] hear[s] all the evidence." (*Id.* at 4; *accord id.* at 5 ("Any discussion of her presumed family member[s'] illegal conduct and the use of the terms 'imposter' and 'Operation Bailout' would entice the jury to convict [the Defendant], not for the offenses with which [s]he has been charged, but for other reasons, like conspiracy . . . .").) The Government responds that evidence about Operation Bailout, the investigations into the Defendant's relatives, and a coordinated scheme is necessary to complete the story of the charged crimes for the jury, as by contextualizing the investigation into the Defendant, explaining how she was identified, and establishing her mens rea. (Dkt. 29 at 12–15.) The Government further maintains that the Defendant meets the dictionary definition of an imposter and has been described as such in "reports written by several of the [G]overnment's witnesses." (*Id.* at 15–16.)

To promote courtroom decorum, the Local Rules require lawyers and pro se parties to "refrain from any display of animosity toward anyone in the courtroom, including a lawyer, litigant, or witness," when in court. M.D. Fla. R. 5.03(c)(8). Because calling the Defendant an imposter in the jury's presence potentially displays animosity toward her in violation of the Local Rules, counsel shall refrain from doing so during the trial. Consequently, the second motion is granted in that respect. *Cf. United States v. Tisdale*, 817 F.2d 1552, 1556 (11th Cir. 1987) ("A prosecutor may not

make an appeal to the jury that is directed to passion or prejudice rather than to an understanding of the facts and of the law." (quotations omitted)).  In addition, the court grants the second motion insofar as the Government intends to introduce evidence of purported misconduct by the Defendant's presumed relatives.  The court appreciates that the Government may need some of the challenged evidence to present its theory of the case to the jury; however, the Government shall focus on proving the charges against the Defendant and shall avoid unfairly prejudicing her, as by inviting the jury to draw conclusions about her guilt based on the purported misconduct of her alleged family members.  *See United States v. Newsome*, 998 F.2d 1571, 1575 (11th Cir. 1993) ("[A] defendant's guilt may not be proven by showing [s]he associates with unsavory characters." (quotation omitted)); *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978) (describing the prosecutor's line of inquiry into the arrest of the defendant's son for possessing stolen guns as "a highly prejudicial attempt to taint [the] defendant's character through 'guilt by association'"); *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992) ("Guilt by association is just what [Rule] 403 was intended to exclude.").

In the third motion, the Defendant contends that the court should exclude under Rules 401, 403, and 404 any reference to her prior criminal history and to uncharged accusations that she committed theft. (Dkt. 28.)  She asserts that the past accusations and convictions of theft are not relevant to the charges against her, are extrinsic because "not charged in the [i]ndictment," and "are temporally remote and factually dissimilar from the charged conduct."  (*Id.* at 4, 6–7.)  She also asserts that the need

"to present certified judgments and call witnesses . . . unrelated to this matter" to introduce evidence of the accusations and convictions will result in unfair prejudice and jury confusion. (Dkt. 28 at 7–8.)

The Government opposes the third motion in its entirety, arguing that the challenged evidence is relevant, intrinsic, and probative of the Defendant's intent to commit the charged offenses. (Dkt. 29 at 16–20.) As to the intrinsic nature of the evidence, the Government states: "[The convictions] are inextricably intertwined with the evidence regarding the charged offense[s], particularly because investigators were able to identify [the] Defendant as the same person who applied for a cedula with the Dominican Republic based on fingerprints from previous convictions." (*Id.* at 18.) As to intent, the Government states: "Because the same intent is required for the charge of theft of government property and theft under Florida law, [the] Defendant's convictions for petit theft are relevant." (*Id.* at 19 (comparing *United States v. Reynolds*, 631 F. App'x 836, 838 (11th Cir. 2015) (defining theft of government property), with Fla. Stat. § 812.014 (defining theft under Florida law)).) In addition, the Government claims that presenting certified judgments and calling witnesses to provide evidence are common occurrences in criminal cases and that limiting instructions to the jury can ameliorate the risk of unfair prejudice to the Defendant. (*Id.* at 19–20.) The Government also "reserves its right to use [the] Defendant's prior convictions as impeachment evidence under Rule 609" should she testify. (*Id.* at 17 n.3.) *See* Fed. R. Evid. 609 (stating the standards for using a criminal conviction to impeach a witness).

Rule 404(b) prohibits a party from using "[e]vidence of any other crime, wrong,

- 11 -

or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but the rule permits a party to use such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). In this criminal case, the rule also requires the Government to "provide reasonable notice of any such evidence that [it] intends to offer at trial, so that the [D]efendant has a fair opportunity to meet" the evidence, and to "articulate in the notice the permitted purpose for which the [Government] intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(A)–(B). However, evidence that is "not part of the crime charged" is not subject to Rule 404(b) when the evidence is intrinsic, meaning that it "pertain[s] to the chain of events explaining the context, motive[,] and set[]up of the crime." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("[Such evidence] is properly admitted if [it is] linked in time and circumstances with the charged crime, or [it] forms an integral and natural part of an account of the crime, or [it] is necessary to complete the story of the crime for the jury."). In deciding whether to exclude evidence under Rule 404(b), courts consider whether the challenged evidence is relevant to an issue besides the defendant's character, whether a Rule 403 risk—for example, unfair prejudice or jury confusion—substantially outweighs the evidence's probative value, and whether sufficient proof will be presented to the jurors to allow them to find that the defendant committed the other crime, wrong, or act. *See United States v. Levinson*, 504 F. App'x 824, 827 (11th Cir. 2013). With regard to the Rule 403 inquiry, the "[s]imilarity

- 12 -

between [an] earlier crime and the charged conduct will make the earlier offense 'highly probative with regard to [the] defendant's intent in the charged offense.'" *United States v. Cooper*, 433 F. App'x 875, 877 (11th Cir. 2011) (quoting *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005)).

Here, the Defendant's criminal history may not be subject to Rule 404(b) to the highly limited extent that it is necessary to "explain[] the context, motive[,] and set[]up of the crime[s]" and "to complete the story of the crime[s] for the jury," *Williford*, 764 F.2d at 1499, with respect to identifying the Defendant through her fingerprints. However, the Government shall focus on proving the charged crimes and shall avoid unfairly prejudicing the Defendant, as by inviting the jury to draw conclusions about her guilt based on her alleged past misconduct. *See United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013) ("Extrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant[] and may entice the jury to draw the prohibited inference that a defendant previously convicted of a crime likely committed the same crime again." (quotation omitted)). Further, at trial, the court will consider arguments about Federal Rule of Evidence 609 and the use of the Defendant's convictions as impeachment evidence should she become a witness in this case. *See* Fed. R. Evid. 609. The court thus grants the third motion in part.

## CONCLUSION

Accordingly:

1. The Defendant's motions in limine (Dkts. 26, 27, 28) are **GRANTED in part**

**and DENIED in part** as explained in this order.

2. The motions are **granted** in part as follows:  In the presence of the jury during the trial, the Government shall not refer to the Defendant's ICE detainer, use the term "illegal alien" or similar terms, or call the Defendant an imposter.  To the extent that documentary evidence contains challenged terms, the court encourages the parties to confer in good faith before the trial to mitigate prejudice.  Except as set out in this order, and subject to paragraph 4 below, the court excludes evidence of purported misconduct by the Defendant's presumed relatives, as well as any reference to the Defendant's prior criminal history and to uncharged accusations that she committed theft.

3. The motions are otherwise **denied**.

4. During the trial, the Government may move to admit specific items encompassed in the challenged evidence, provided that the items to be admitted possess sufficient probative value as to the charges against the Defendant to warrant admission when the probative value is considered alongside the danger of unfair prejudice to the Defendant.  *See* Fed. R. Evid. 403 (permitting courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

- 15 -

**ORDERED** in Orlando, Florida, on March 23, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record